IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SHENEAKA WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 15-203-CG-N |
| | ) | |
| SDI of JACKSON, LLC, et al, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' motion for summary judgment (Doc. 25), Plaintiff Sheneaka Williams's opposition thereto (Doc. 27), and Defendants' reply (Doc. 29). Defendants have also moved this Court to strike portions of Plaintiff's affidavit (Doc. 28) and to strike the affidavit testimony of Ross Wallace (Doc. 30).[1] For the reasons explained below, the Court finds Defendants' motion for summary judgment is due to be **granted in part** and **denied in part**.

## I. Background

This case arises from Williams's employment with and termination from Defendant SDI of Jackson, LLC's ("Sonic") restaurant in Jackson,

---

[1] The Court reminds Defendants to comply with all Local Rules. Specifically, all submissions "must be doubled-spaced," and all "[c]ase names must be italicized or underlined." All future filings must conform to the Court's requirements. L.R. 5(a).

Alabama. The Complaint states Defendant Joe Toney ("Toney"), the Kitchen
Manager, sexually harassed Williams and created a hostile work
environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.
§§ 2000e et seq. (Doc. 1). It further alleges Sonic terminated Williams in
retaliation for her complaints against Toney. Id. Williams has also brought
state law intentional tort claims against Sonic, Toney, and Sonic's franchisee
Brad Dronet ("Dronet"), as well as a negligent and wanton supervision claim
against Sonic and Dronet. Id.

**A. Undisputed Facts**

The parties agree on few facts, which will be summarized briefly.
Williams began working at the Jackson, Alabama Sonic on October 6, 2011,
and remained in that job until she was terminated on or around March 22,
2014. (Doc. 25, p. 17). Defendant Dronet is the franchisee and owner of the
Sonic in question, and his wife Carlene Dronet served as the Human
Resources Manager during the dates relevant to this case. (Doc. 25, p. 17, 21).
The record demonstrates Williams received five written warnings regarding
violations of Sonic's employment policies from November 2012 through
January 2014. (Id. at 28–32). Two infractions were for tardiness, and three
were related to shortage of cash at the end of her shifts. Id. On March 22,
2014, Williams was involved in a physical altercation with another Sonic
employee. (Id. at 25–27; Doc. 27-1, p. 6). The parties disagree about the exact

nature of the scuffle, including who initiated it and whether Williams was fired at that time. (Compare Doc. 25, p. 25–27 with Doc. 27-1, p. 6).

The parties further agree that on October 6, 2011, Williams underwent new employee orientation, which included an overview of Sonic's harassment policy. Id. at 19, 21. This policy defines sexual harassment as behavior that:

> • Includes unwelcome, unsolicited advances, or propositions, offensive sexual flirtations, or insulting, degrading sexual remarks or conduct.
> • Implies, demands, or suggests that an employee's present or future work status is contingent on the employee's toleration of, or consent to, sexual advances
> • Permits or encourages retaliation against an employee for reporting complaints about sexually harassing behavior.

Id. at 21. An employee who has been subjected to harassment or discrimination based on gender, among other protected classes, "should report the problem at once to [his or her] immediate supervisor." Id. In the event the employee does not feel comfortable reporting to that person, the employee "should proceed at once to [the] next level supervisor, or any level of supervisor with management responsibilities over [Sonic], or you may contact: Brad Dronet, Franchisee [or] Carlene Dronet, Human Resources Director." Id. (contact information omitted and formatting edited). After the employee reports the alleged harassment or discrimination, the policy dictates the allegations "will be investigated" and will include "appropriate disciplinary action" when warranted. Id. The policy states, however, "no disciplinary action will be taken without an investigation of the facts,

normally including a signed written statement from the complaining employee." Id. Williams signed her copy of the policy in acknowledgment of its receipt on October 6, 2011. Id. The parties agree Williams never submitted a written complaint about Toney's alleged harassment of her.

**B. Disputed Factual Allegations**

Plaintiff initially began working the night shift but was then transferred to the day shift. (Doc. 27-1, p. 4).[2] Once she began working the day shifts, she reports, "Toney, the Kitchen Manager[,] began sexually harassing [her]." Id.  This alleged harassment included: (1) asking Williams "for sex in return for money on at least two occasions," (2) asking her "if he could see [her] breasts and touch them," (3) telling her that she "looked fine" and "had a nice butt and nice breasts," (4) "brush[ing] by" her "constantly" while touching her breasts and bottom, and (5) reaching for things and touching her breasts.  Id. at 5. Moreover, Williams states she "saw him touch the private parts of a co-employee with Mr. Dronet present." Id. According to Williams, her co-worker "got very upset[,] but Mr. Dronet didn't do anything." Id. Moreover, Williams also reports she "saw Mr. Dronet slap another teenaged female co-employee on her bottom. That employee asked Mr. Dronet why he did that, and he replied, 'because you are a bad girl[.]'" Id. She further

---

[2] Plaintiff's affidavit is the subject of Defendants' motion to strike (Doc. 28). The Court addresses this motion, infra, and will only rely on the portions it deems permissible under FED. R. CIV. PRO. 56(c) and the relevant Federal Rules of Evidence.

characterizes these inappropriate comments and touches as "constant" and "continuous" throughout her employment. Id. at 4–5.

Williams reported the harassment "to the store manager" but maintains the "harassment was the same after [she] reported [Toney] as it was before [she] reported him." Id. at 5. She further alleges Dronet "condoned" and "joined in the harassment" of female employees. Id. Williams claims Dronet "told [her she] should be more flirtatious with customers" and that her failure to do so, in combination with her continued complaints, resulted in her termination. Id. She further states she never received written warnings until after she began complaining about Toney and other employees, who did not report harassment, did not receive written warnings for the same or similar behavior. Id. at 5–6.

Williams admits she was involved in a physical altercation with another employee, whom she identifies as Toney's sister-in-law.[3] (Doc. 27-1, p. 6). She differs with Defendants' version of the melee in two main ways: She claims (1) her coworker "swung at [her] first" but was not terminated for her actions and (2) "Mr. Green came up to [her] in the parking lot and told [her she] was not fired" and she "should report back to work on [her] next shift." Id. When she returned to Sonic for her next shift, she claims Toney "laughed

---

[3] Williams states the employee was "Mr. Green's wife" but does not identify her by name. Green was the General Manager of the Sonic in Jackson, Alabama. She claims Green and Toney are brothers. (Doc. 27-1, p. 6). Defendants do not contradict her assertions but merely identify the altercation as between Williams, her sister Cassandra (also an employee at the time), and their manager Amanda Phillips. (See Doc. 25, p. 25–27).

at [her] and said [she] was not on the schedule"; thereafter, her name never appeared on the schedule, and her employment ended. Id.

To support her claims, Plaintiff submitted the affidavit of her coworker Ross Wallace ("Wallace").[4] (See Doc. 27-1, p. 1–3). Wallace worked at Sonic around the same time as Williams and personally observed Toney's behavior and actions while at Sonic. Wallace contends he personally witnessed Toney: (1) "rub against the females in tight spaces," (2) "rub his privates against their bottom[s] many times," (3) "use his arm to try and brush against their breasts or bottom," and (4) "tak[e] pictures with his [Toney's] phone of the girls' body parts." Id. at 1–2. Wallace states he "saw [Toney] do this to Sheneaka [Williams] daily." Id. (regarding behaviors 1 through 3 listed supra). Further, Wallace described the general reaction to Toney's act of taking photos at Sonic: "It was known by the employees that if you heard the click of a phone, everybody would flinch and look to see if Toney was taking their picture." Id. at 2. Wallace further alleges that he viewed photos on Toney's phone "of the female employees' bottoms" when he was using Toney's

---

[4] This affidavit is the subject of Defendants' motion to strike (Doc. 30). The Court rejects most of Defendants' objections to the affidavit, infra, and will only rely on the portions it deems permissible under FED. R. CIV. PRO. 56(c) and the relevant Federal Rules of Evidence. The Court also notes Defendants state Plaintiff failed to provide "one other female witness to support her claims." (Doc. 29). Defendants cite no case law to support this need for testimony from only other female victims presumably because none exists. The law clearly allows—and even encourages—men who witness harassment to report it and to provide evidence of violations of federal and state law. See Pressley v. City of Anniston and Daryl Abernathy, 2016 WL 4679135, *18 (N.D. Ala. Sept. 7, 2016).

phone with permission. Id. After seeing these photos, Wallace reported this behavior to Courtney Hill, a manager at Sonic. Id. After his report, "[a] store meeting was held where we were told there was to be no more 'perversion' and given a sheet to sign on sex harassment." Id. Wallace believes that meeting occurred in 2013 but reports the "atmosphere continued after that meeting." Id.

As to be expected, Defendants paint a strikingly dissimilar picture in their submissions to the Court. Defendants collectively deny any allegations of sexual harassment and insist Plaintiff never submitted a complaint to Sonic through any of her managers, supervisors, or the human resources manager. (See Doc. 25, p. 5, 17). Defendants maintain a complaint of sexual harassment would necessarily result in "a written, signed copy in [Sonic's] records," which does not exist. (Doc. 25, p. 17).

Defendants further assert Sonic terminated Williams "for inciting violence in the workplace by threatening and physically assaulting her supervisor, Amanda Phillips." Id. Both Phillips and the restaurant's General Manager Charlie Green (also known as Leonard Green) submitted written statements about the altercation. Both statements reveal Plaintiff and her sister, Cassandra Williams, were involved in the melee and indicate Plaintiff became involved only after Cassandra and Phillips engaged in a verbal argument. (See Doc. 25, p. 25–26). Green states he witnessed both Cassandra and Plaintiff approach Phillips and start fighting with her. Id. at 25. He

claims he broke up the fight between the three women and that, immediately thereafter, Plaintiff "tried to pull the switchboard down off the table." Id.  He also states he wrote a disciplinary report for both Cassandra and Plaintiff and terminated them. Id.[5]

Phillips describes her altercation with the Williams sisters as "a full blown argument" in which her life "was threaten[ed]." (Doc. 25, p. 26). The initial argument took place only between Cassandra and Phillips, but Phillips states Plaintiff joined the scuffle after Phillips insisted Cassandra "clock out and go home." Id. Phillips claims Plaintiff "approached the clock out machine passing [Phillips] with a shoulder push." Id. Neither Cassandra nor Plaintiff left the premises after clocking out; rather, Phillips states,

> They both proceeded to come towards me[,] and Shene[a]ka Williams walked in my face with her body leaning up against mine . . . . Then Shene[a]ka Williams swung her fist and tried to hit me[,] and I jumped back, remove[d] the headsets off my head, and blocked their motions. My general manager Leonard Green stepped in the middle, all at the same time, and escorted them both out of the building. . . . The general manager told both of them to leave and asked [Plaintiff] to calm down.

Id. According to Phillips, Plaintiff returned to Sonic later that day and "was apologetic." Nonetheless, Green "told both of them they were fired and they will be written up for their behavior." Id. Despite having been in a physical altercation with Plaintiff, Phillips stated, "I have never had a problem with Shene[a]ka." Id.

---

[5] The Court notes, however, that only Cassandra's termination report has been submitted into evidence. (See Doc. 25, p. 24).

## II. Defendants' Motions to Strike

In conjunction with their reply, Defendants filed two motions to strike: one to strike portions of Plaintiff's affidavit (Doc. 28) and one to strike the vast majority of Wallace's affidavit (Doc. 30). With the December 1, 2010 rules change to Rule 56 of the Federal Rules of Civil Procedure, motions to strike submitted on summary judgment are no longer appropriate. Revised Rule 56(c)(2) provides, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." The Advisory Committee Notes specify as follows:

> Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. There is no need to make a separate motion to strike. If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

FED. R. CIV. P. 56, Adv. Comm. Notes, "Subdivision(c)" (2010 Amendments). As such, the Court construes the Defendants' motions as Objections, to be overruled or sustained, and finds the motions to strike to be **MOOT**.

## A. Objections to Portions of Plaintiff's Affidavit

Defendants object to portions of Plaintiff's affidavit on the basis that these portions constitute inadmissible hearsay or are speculative; Defendants, however, fail to cite to the correlating Federal Rules of Evidence.

(See Doc. 28). An affidavit or declaration can be "used to support or oppose a motion" as long as they are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matter stated." FED. R. CIV. P. 56(c)(4). Additionally, an affidavit must generally set forth facts and show affirmatively how the affiant obtained personal knowledge of those facts. See Ward v. First Federal Savings Bank, 173 F.3d 611, 617-18 (7th Cir. 1999) ("The Malkowski affidavit merely asserts that he is 'aware' of the alleged instruction by Pavlic; it does not reveal the source of Malkowski's awareness—be it a written directive from Pavlic, a conversation with him, or merely water-cooler gossip. As such, the affidavit fails to establish that Malkowski has personal knowledge on the subject of Pavlic's purported instruction."); see also 3 Am.Jur.2d Affidavits § 8 ("An affidavit must set forth facts and show affirmatively how the affiant obtained personal knowledge of those facts."). The Court will address each objection individually.

    1. Plaintiff's statement that the store manager reported an incident to Dronet: The Court sustains Defendants' objection as to the phrase "who reported it to Bradley Dronet" in the first sentence of paragraph three (Doc. 27-1, p. 5). Plaintiff does not indicate any basis of personal knowledge to support the fact that the manager to whom she reported Toney's harassment then reported Plaintiff's accusations to Dronet. See FED. R. EVID. 602.

2. Comments made by the manager to Plaintiff about Dronet's Mississippi store: The Court overrules the objection as to the sentence, "The store manager later apologized for not being able to stop the conduct but said that Dronet was not going to do anything because he had not done anything about sexual harassment in his store in Mississippi." (Doc. 27-1, p. 5, ¶ 3). Plaintiff has personal knowledge regarding what the manager said because it was said to her. See FED. R. EVID. 602. This sentence is relevant as it is probative of Sonic's knowledge of Toney's alleged harassment. See FED. R. EVID. 401. Although it is hearsay, this alone will not preclude the Court's consideration of it on Defendants' motion for summary judgment. See Macuba v. Deboer, 193 F.3d 1316, 1323 (11th Cir. 1999) (acknowledging "[s]ome courts, including our own, appear to have restated the general rule to hold that a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be 'reduced to admissible evidence at trial' or 'reduced to admissible form.'") (internal citations omitted).

3. Plaintiff's statement, "Bradley Dronet supposedly had a meeting to discuss the situation": The Court sustains Defendants' objections to this partial sentence in Plaintiff's affidavit because Plaintiff does not indicate this fact is based on personal knowledge. (Doc. 27-1, p. 3, ¶ 3). In fact, she says Dronet "supposedly" called a meeting, which strongly indicates she has no basis of personal knowledge. See FED. R. EVID. 602.

**B. Ross Wallace's Affidavit**

In Doc. 30, Defendants move to strike all portions of Wallace's affidavit excepting one sentence: "I saw him do this to Sheneaka daily." As explained above, the Court will treat this motion to strike as objections to be sustained or overruled. The Court generally overrules Defendants' objections to Wallace's affidavit, as a majority of it is based on his personal observations while an employee at Sonic and is probative of Plaintiff's claims. Further, the Court finds most of the affidavit complies with Federal Rule of Evidence 701 as testimony given by lay witnesses because it is based on personal observations and rationally related to Wallace's perception. The Court can find no hearsay statements in the entirety of the affidavit and thus overrules the objection on that count. The Court sustains Defendants' objections in part as follows:

- The Court strikes any language relating to Wallace's employment at the Little Touch of Cajun Grille because it is irrelevant to allegations of sexual harassment that occurred at Sonic. Thus, the Court will strike the sentence, "I also worked at the Little Touch of Cajun Grille owned by the same owner two years later," the word "both," and the phrase "and the Grille" from paragraph 1 of his affidavit. (Doc. 27-1, p. 1). See FED. R. EVID. 401.

- The Court strikes the sentence, "It was well known by all the employees at both restaurants that Toney sexually harassed the female employees"

because it presents an argument and/or a legal conclusion. (Doc. 27-1, p. 2, ¶ 2). See Howard v. Hudson, 2014 WL 5500731, *5 (S.D. Ala. Oct. 30, 2014).

- The Court will also strike the sentence, "There was an occasion when I caught Toney going through my phone," in paragraph 3 because it is not relevant to the instant case. (Doc. 27-1, p. 2). See FED. R. EVID. 401.

- The phrase "who reported it to Mr. Dronet" in paragraph 3 will be stricken because Wallace provides no evidence that he has personal knowledge of Hill's actions in response to his initial report. (Doc. 27-1, p. 2). See FED. R. EVID. 602.

- In the final sentence of paragraph 3, the Court will strike the phrase "harassment and" so that the sentence reads, "The atmosphere continued after that meeting." The Court finds the term "harassment" used in this context to be a legal conclusion. (Doc. 27-1, p. 2). See Howard, 2014 WL 5500731 at *5.

- The Court strikes the entirety of paragraph 4 with the exception of the sentence, "From my personal observations, Toney was not educated; he could barely read." (Doc. 27-1, p. 2–3). Wallace provides no indication that this information is based upon his personal knowledge. Further, the sentence beginning, "He did not try . . ." presents argument and/or a legal conclusion and must, therefore, be stricken. See Howard, 2014 WL 5500731 at *5. The final two sentences regarding Toney's cash payments

are struck because they are irrelevant to the case at hand. See FED. R.
EVID. 401.

## III. Summary Judgment

Defendants moved this Court for summary judgment in their favor as
to Plaintiff's Title VII sexual harassment and retaliation claims, her state
law intentional tort claims, and her state law negligence claim.

## A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides summary judgment
shall be granted "if the movant shows that there is no genuine dispute as to
any material fact and the movant is entitled to judgment as a matter of law."
The trial court's function is not "to weigh the evidence and determine the
truth of the matter but to determine whether there is a genuine issue for
trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  The mere
existence of a factual dispute will not automatically necessitate denial;
rather, only factual disputes that are material preclude entry of summary
judgment. Lofton v. Sec'y of Dep't of Children & Family Servs., 358 F.3d 804,
809 (11th Cir. 2004). "If the evidence is merely colorable, or is not
significantly probative, summary judgment may be granted." Anderson, at
249–50 (internal citations omitted).

Once the movant satisfies his initial burden under Rule 56(c), the non-
moving party "must make a sufficient showing to establish the existence of
each essential element to that party's case, and on which that party will bear

14

the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response . . . must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." Vega v. Invsco Group, Ltd., 2011 WL 2533755, *2 (11th Cir. June 24, 2011). In reviewing whether a non-moving party has met its burden, the Court must draw all justifiable inferences in favor of the non-moving party. Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998–99 (11th Cir. 1992) (internal citations and quotations omitted). Thus the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251–52.

**B. Hostile Work Environment—Sexual Harassment**

Title VII of the Civil Rights Act prohibits employers from discriminating in the workplace on the basis of an individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To establish a prima facie case of Title VII hostile work environment and/or sexual harassment, Williams must show: 1) she belongs to a protected group; 2) she

15

has been subjected to unwelcome sexual harassment such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; 3) the harassment was based on a protected characteristic (*i.e.*, sex) of the employee; 4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and to create a discriminatorily abusive working environment; and 5) the employer is responsible for such environment under a theory of vicarious or direct liability. See, e.g., Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc) (citation omitted); see also, e.g., Reeves v. DSI Sec. Servs., Inc., 395 Fed.Appx. 544, 545–46 (11th Cir. 2010); McCann v. Tillman, 526 F.3d 1370, 1378 (11th Cir. 2008); Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002). "Workplace conduct is not measured in isolation." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270 (2001) (per curiam). Evidence of harassment is considered cumulatively—in the totality of the circumstances. Mendoza, 195 F.3d at 1242.

Sonic does not address the first three prima facie elements in its motion for summary judgment but focuses on the fourth and fifth elements. Sonic argues, even if Plaintiff can meet her burden, it can avoid liability by establishing the two elements of the Faragher-Ellerth defense.

## 1. The Severity or Pervasiveness of the Sexual Harassment

"Determining whether the harassment was sufficiently severe or pervasive involves 'both an objective and subjective component.'" McCann,

16

526 F.3d at 1378 (internal citation omitted). To meet the subjective component, Plaintiff must show she subjectively perceived the working environment to be hostile or abusive. See Leslie v. Cumulus Media, Inc., 814 F.Supp.2d 1326, 1342–43 (S.D. Ala.). In determining whether Plaintiff's subjective perception is objectively reasonable, "Eleventh Circuit precedent mandates that courts consider the 'totality of the circumstances.'" Id. at 1343. Factors to consider when evaluating the objective component include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys. Inc., 510 U.S. 17, 22–23 (1993). As Sonic appears to accept Williams subjectively perceived her working environment to be hostile or abusive, the Court focuses on whether the alleged harassment would be perceived as such by an objectively reasonable person in Williams's circumstances.

Plaintiff testified the following words and conduct contributed to a hostile work environment: Toney (1) asked her "for sex in return for money on at least two occasions," (2) asked "if he could see [her] breasts and touch them," (3) remarked that Plaintiff "looked fine" and "had a nice butt and nice breasts," (4) would constantly brush by her and touch her breasts and bottom, and (5) "would reach for things and touch [her] breasts." (Doc. 27-1, p. 4–5). Williams describes Toney's behavior as "a constant problem" and

characterizes it as "continuous until [her] termination." Id. at 4. In addition
to her testimony, her co-worker Wallace testified he personally witnessed
Toney touch or rub up against Plaintiff's breasts or bottom on a "daily" basis.
Id. at p. 2.

As to frequency, Plaintiff identifies recurring incidents of
inappropriate sexual touching during her two-and-a-half-year employment at
Sonic. Wallace characterizes Toney's physical behavior towards Plaintiff as
"daily," while Williams herself describes it as "constant" or "continuous."
Assuming Toney brushed against her bottom or her breasts once a day for
five days a week, his alleged sexual touching would have occurred 625 times.[6]
Although Toney's comments to Williams were significantly more infrequent,
the alarming frequency of his unwelcome sexual touching dictates this factor
weighs heavily in Plaintiff's favor. See Pressley v. City of Anniston and Daryl
Abernathy, 2016 WL 4679135, *9 (N.D. Ala. Sept. 7, 2016) (denying
defendant's motion for summary judgment when plaintiff presented evidence
of "repeated, numerous, and daily requests" of a sexual nature) (emphasis in
original).

As to severity, "[a] recurring point in these [Supreme Court] opinions is
that 'simple teasing,' offhand comments, and isolated incidents (unless

---

[6] This calculation assumes a 50-week working year (thus 250 instances per
year at 2.5 years). The Court cannot be more specific in its calculations
because neither Plaintiff nor Defendants addressed how often Williams and
Toney worked together during her employment. The Court makes this
assumption based on the fact that Williams testified she worked the day shift
and that Toney worked as the Kitchen Manager.

extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998) (internal citation omitted). Unlike the conduct alleged in the cases cited by Defendants, the conduct at issue here can be seen objectively as severe. Toney's alleged remarks are not "simple teasing," and his ubiquitous sexual touching cannot be considered "isolated." See, e.g., Johnson v. Booker T. Washington Broadcasting Serv., Inc., 234 F.3d 501, 509 (11th Cir. 2000) (finding defendant's conduct "severe" when he was "standing so close to [Plaintiff] that his body parts touched her from behind"); Pressley, 2016 WL 4679135 at *9.

For the same reasons, the Court finds Toney's alleged conduct, specifically the daily touching of Plaintiff's breasts and bottom, is physically threatening and humiliating. While some of Toney's complained of conduct can be reduced to an "offensive utterance" and boorish behavior, his "constant" or "daily" (see Doc. 27-1) sexual touching goes far beyond utterances and enters the realm of threatening touching. See Johnson, 234 F.3d at 509.

Finally, the Court considers whether "the conduct unreasonably interferes with the employee's job performance." Mendoza, 195 F.3d at 1246. Williams testified she reported Toney's conduct to the store management, although her report had no effect. Id. at 4. Moreover, Wallace stated the female employees at Sonic would "flinch" when they heard the noise of a

cellphone camera because Toney would take photographs of the females'
bottoms and breasts. Id. at p. 2. The parties did not include an analysis of
this final factor in their briefs, but the Court considers the evidence in the
light most favorable to the non-moving party. As such, it finds a jury could
determine that Toney's conduct interfered with Plaintiff's job performance.

The Court concludes a reasonable jury could find Toney's alleged
conduct towards Williams was sufficiently severe or pervasive such that it
falls within the definition of sexual harassment. It now turns to whether
Sonic may be liable for this harassment.

## 2. Sonic's Liability and the Faragher-Ellerth Defense

The final element of Williams's hostile work environment claim
requires a basis for employer liability. In Faragher v. City of Boca Raton, 524
U.S. 775 (1998) and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998),
the United States Supreme Court held employer liability is automatic when
the supervisor's harassment culminates in a "tangible employment action,
such as discharge, demotion, or undesirable reassignment." Faragher, 524
U.S. at 807–08; Ellerth, 524 U.S. at 762–63. Where no such action has
occurred, "[a]n employer is subject to vicarious liability to a victimized
employee for an actionable hostile environment created by a supervisor with
immediate (or successively higher) authority over the employee." Faragher,
524 U.S. at 807; Ellerth, 524 U.S. at 745. An employer, however,

> may avoid vicarious liability by raising as an affirmative
> defense that it: 1) exercised reasonable care to prevent

> and correct promptly any harassing behavior, and 2) the
> employee unreasonably failed to take advantage of any
> preventive or corrective opportunities provided by the
> employer or to avoid harm otherwise.

Johnson v. Austal, U.S.A., L.L.C., 805 F.Supp.2d 1299, 1317 (S.D. Ala. 2011)

(citing Faragher, 524 U.S. at 807, 809). As the Eleventh Circuit held, "[b]oth

elements must be satisfied . . . and the defendant bears the burden of proof on

both elements." Frederick v. Spring/United Mgmt. Co., 246 F.3d 1305, 1313

(11th Cir. 2001) (citations omitted).

An employer is also directly liable for co-worker harassment if it knew

(actual notice) or should have known (constructive notice) of the harassing

conduct but nonetheless failed to take prompt remedial action. See Miller v.

Kenworth of Dothan, Inc., 277 F.3d 1269, 1278 (11th Cir. 2002).  After

establishing notice, Plaintiff must show Sonic "failed to take immediate and

appropriate corrective action." Watson v. Blue Circle Inc., 324 F.3d 1252,

1261 (11th Cir. 2003). As this Court has previously stated,

> Specifically, the employer's action must be "effective
> action" and "must be 'reasonably calculated to end the
> harassment,' and the promptness and adequacy of the
> employer's response must be evaluated on a case-by-case
> basis. Of special importance is whether the . . .
> harassment ended after the remedial action was taken."

Johnson, 805 F.Supp.2d at 1317 (quoting Munn v. Mayor and Aldermen of

City of Savannah, Ga., 906 F.Supp. 1577, 1583 (S.D. Ga. 1994)).

Because Plaintiff alleges Toney worked at Sonic as her co-employee,

and not as a supervisor, the Court will proceed under this theory of employer

liability.[7] Both parties agree Sonic had a sexual harassment policy in place during Williams's employment. In fact, Williams received a copy of this policy during her employee training. (Doc. 25, p. 21). This policy avers sexual harassment "will not be tolerated." Id. Sonic maintains Williams failed to comply with the terms of this policy by never "ma[king] an allegation of complaint of sexual harassment or hostile work environment" because there is no "written, signed copy in [its] records."[8] (See Doc. 25, p. 17). Moreover, Sonic claims it had no knowledge of Plaintiff's complaint until it "received the notice from the EEOC." Id.

The Court, however, finds ample evidence allowing a jury to conclude Sonic knew of Toney's widespread harassment of its female workers, including Williams. First, Williams states she reported the harassment "to the store manager," although she does not provide a name or a date. (Doc. 27-1, p. 5). Wallace also testifies he reported Toney's sexual harassment, specifically the actions of taking photos of the female employees' body parts, to Courtney Hill, a manager. Id. at 2. He further maintains his report to Hill prompted a "store meeting … where we [the employees] were told there was to be no more 'perversion' and given a sheet to sign on sex harassment." Id.

---

[7] Sonic does not address whether Toney was Williams's supervisor or a co-employee in its motion (Doc. 25).

[8] Sonic's own policy, however, states that a written, signed complaint is not a mandatory aspect of its anti-harassment policy. While an investigation of sexual harassment claims "normally includ[e] a signed written statement from the complaining employee," there is no evidence that a complaint would not be investigated without this document. See Doc. 25, p. 21.

This meeting occurred sometime in 2013, before Plaintiff's employment terminated. In addition to this store meeting, Plaintiff also testified Toney engaged in alleged harassment in Dronet's presence: "Once I saw [Toney] touch the private parts of a co-employee with Mr. Dronet present. She got very upset[,] but Mr. Dronet didn't do anything." Id. at 5. This evidence suggests Sonic, through its owner and franchisee, had at minimum constructive knowledge of Toney's harassing conduct.

This evidence, which Sonic did not refute in its reply (Doc. 29),[9] further demonstrates Sonic "failed to take immediate and appropriate corrective action." See Watson, 324 F.3d at 1261. According to Williams, Dronet "didn't do anything" when he witnessed Toney touch a female employee inappropriately. Williams further testified the manager to whom she reported the sexual harassment told her "Dronet was not going to do anything" to stop the conduct. (Doc. 27-1, p. 5, ¶ 3). Although Sonic held a store meeting about its sexual harassment policy after Wallace reported Toney to Hill in 2013, the evidentiary record—albeit a scant one— demonstrates the meeting had little to no effect whatsoever. See Doc. 27-1 p. 2, 5. As such, a reasonable jury could find that Sonic did not take "effective action" that was "reasonably calculated to end the harassment." See Munn, 906 F.Supp. at 1583.

---

[9] Sonic merely argues that Plaintiff failed to follow its procedural guidelines by not filing a written complaint. In considering the evidence in the light most favorable to the non-moving party, the Court determines a jury could find Plaintiff's and Ross's complaints to store managers constitute notice.

Having determined a jury could reasonably conclude Sonic is directly liable for the hostile work environment it either actually or reasonably should have known about, yet failed to remedy, the Court must preclude Sonic from invoking the Faragher-Ellerth defense. A question of material fact exists as to whether Sonic exercised reasonable care to prevent and to correct promptly any of Toney's harassing behavior. As the Eleventh Circuit requires proof of both elements of the Faragher-Ellerth defense, summary judgment is inappropriate.

In taking the facts most favorable to the Plaintiff, the non-moving party, the Court finds that questions of material fact remain and **DENIES** Sonic's motion for summary judgment on the Title VII hostile work environment claim.

## C. Title VII Retaliation

Title VII prohibits retaliation against an employee who has "opposed any practice made an unlawful employment practice[.]" 42 U.S.C. § 2000e–3. A plaintiff may prove retaliation by relying on either direct, circumstantial, or statistical evidence.  See Walker v. Nationsbank of Florida N.A., 53 F.3d 1548, 1555 (11th Cir. 1995).  Direct evidence is evidence which, "if believed, proves the existence of discriminatory motive 'without inference or presumption.'" Hamilton v. Montgomery County Bd. of Educ., 122 F.Supp.2d 1273, 1279 (M.D. Ala. 2000) (quoting Carter v. Three Springs Residential Treatment, 132 F.3d 635, 641 (11th Cir. 1998)). Williams has submitted no

direct evidence of retaliation.  None of the evidence offered proves without inference or presumption that Sonic engaged in the actions at issue because Williams previously filed grievances or complaints.  Williams's claim relies solely on circumstantial evidence.

A plaintiff may attempt to show retaliation based on circumstantial evidence through the application of the McDonnell Douglas burden-shifting analysis established by the Supreme Court. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under the McDonnell Douglas framework, a plaintiff must first raise an inference of retaliation by establishing a prima facie case. See Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (citing Combs v. Plantation Patterns, 106 F.3d 1519, 1527–28 (11th Cir. 1997)). To establish a prima facie case of retaliation under Title VII, "the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events." Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007).  If a plaintiff makes out a prima facie case of retaliation, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d 1056, 1059 (11th Cir.1999); see also McDonnell Douglas Corp, 411 U.S. at 802–03. Then, if the defendant offers legitimate reasons, the presumption of retaliation disappears and the burden shifts back to the plaintiff to show that

the employer's proffered reasons for taking the adverse action were pretext for prohibited retaliatory conduct. <u>Sullivan</u>, 170 F.3d at 1059.

   In the instant case, Sonic argues Williams cannot meet her <u>prima facie</u> burden because she cannot show the causal connection between her protected activity[10] and her termination.[11] In order to establish a causal connection, a plaintiff "need only show 'that the protected activity and the adverse action are not completely unrelated.'" <u>Wideman v. Wal-Mart Stores, Inc.</u>, 141 F.3d 1453, 1457 (11th Cir. 1998) (quoting <u>Meeks v. Computer Assocs. Int'l</u>, 15 F.3d 1013, 1021 (11th Cir. 1994)).  A plaintiff satisfies this element if she shows her employer knew of the protected activity. <u>See</u> <u>Goldsmith v. City of Atmore</u>, 996 F.2d 1155, 1163 (11th Cir. 1993). Sonic argues Williams cannot meet this element because she cannot prove it knew about her protected activity at the time Green made the decision to terminate her on March 22, 2014. Williams, however, contends Sonic had knowledge of her protected activity before it

---

[10] Sonic altogether ignores the first two elements of the claim in its motion for summary judgment (Doc. 25). Eleventh Circuit precedent clearly states internal complaints of sexual harassment to a supervisor constitute statutorily protected activity. <u>See</u> <u>Carter v. University of S. Ala. Children's & Women's Hosp.</u>, 510 F.Supp.2d 596, 607 (S. D. Ala. 2007).
[11] To maintain a claim of retaliation, the alleged adverse action must be "materially adverse," which means "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006).  Instead, to be actionable, the adverse action must be "likely to chill the exercise of constitutionally protected speech." <u>Stavropoulos v. Firestone</u>, 361 F.3d 610, 618 (11th Cir. 2004).  The Supreme Court has characterized the anti-retaliation provision as protecting an individual not from all retaliation but from retaliation that produces injury or harm. <u>Burlington</u>, 126 S.Ct. at 2414.  The acts must be material and significant and not trivial. <u>Id.</u> at 2415.

terminated her and refutes its arguments on two levels: She insists (1) Green did not actually terminate her, rather Toney literally laughed her out of work after the March 22 fight and (2) even if Green had terminated her, he had constructive knowledge of her complaints. At the summary judgment juncture, it is not for the Court to weigh the evidence presented; rather, it must look at the facts in the light most favorable to the non-moving party. As such, the Court concludes Plaintiff has presented sufficient evidence to create a question of material fact as to whether Sonic knew, either actually or constructively, Williams had engaged in protected activity by complaining to the store manager about Toney's sexual harassment.

Although Plaintiff has created a question of fact regarding Sonic's knowledge of her complaints at the time of its decision to terminate her, she has nonetheless failed to carry her burden under the McDonnell Douglas shifting framework. The Court finds Williams has not shown that Sonic's proffered non-retaliatory reasons for its action was pretext for prohibited retaliatory conduct.  As explained above, once a plaintiff makes out a prima facie case of retaliation, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." Sullivan, 170 F.3d at 1059.  The employer's burden is exceedingly light." Hamilton, 122 F.Supp.2d at 1280 (quoting Meeks, 15 F.3d at 1021 (internal quotations omitted)). Sonic proffered evidence it terminated Plaintiff after she engaged in a physical altercation with her co-worker. This

evidence includes two written statements testifying as to the events of March 22, 2014. Furthermore, Sonic cited five prior Employee Warning Notices from Plaintiff's file. Four of these reports indicate another infraction will lead to termination. (See Doc. 25, p. 28–31). Plaintiff openly admits to her involvement in the March 22 altercation and acknowledges that she has received multiple warnings.

Because Sonic has offered legitimate reasons, the presumption of retaliation disappears, and the burden shifts back to Williams to show that the employer's proffered reasons for taking the adverse actions were pretext for prohibited retaliatory conduct. Sullivan, 170 F.3d at 1059. "At the pretext stage, in order to survive summary judgment, Plaintiff must provide sufficient evidence to allow a reasonable fact finder to conclude, at a minimum, that the proffered reasons were not actually the motivation for the employer's decision." Miller v. Bed, Bath & Beyond, Inc., 185 F.Supp.2d 1253, 1270 (N.D. Ala. 2002) (citing Combs, 106 F.3d at 1538). Plaintiff may do this "(1) by showing that the employer's legitimate non[retaliatory] reasons should not be believed; or (2) by showing that, in light of all of the evidence, a [retaliatory] reason more likely motivated the decision." Id. (citations omitted). "This is done by pointing to 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of credence.'" Hamilton, 122 F. Supp.2d at 1281 (quoting Combs, 106 F.3d at

1539).  The ultimate burden of persuasion remains with the plaintiff at all times in cases involving merely circumstantial evidence. <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981). As indicated above, Plaintiff falls short of this burden. The evidence, even taken in the light most favorable to her, does not indicate any implausibility or inconsistency in Sonic's proffered reason, and Plaintiff has provided no evidence that the physical altercation on March 22 was merely pretext to retaliate against her for her complaints. She has provided no firm timeline demonstrating how her complaint(s) to Sonic's management lined up with any instances of retaliation either in being written up or terminated. Her confirmation that she fought with a co-employee, without more evidence on her part, confirms Sonic terminated her for a legitimate, nondiscriminatory reason. As such, Sonic's motion for summary judgment as to Plaintiff's retaliation claim is hereby **GRANTED**.

### D. Plaintiff's State Tort Claims

In her Complaint (Doc. 1), Plaintiff alleged Alabama state tort claims of invasion of privacy (Count II), assault and battery (Count III), the tort of outrage (Count IV), and negligent and wanton supervision (Count V). Toney, Dronet, and Sonic have been named as defendants as to the three intentional tort claims. Sonic and Dronet defend against the negligence claim. "It is well settled that Alabama does not recognize an independent cause of action for sexual harassment.  Instead, claims of sexual harassment are maintained

under common-law tort theories such as assault and battery, invasion of

privacy, negligent training and supervision, and outrage." Machen v.

Childersburg Bancorporation, 761 So.2d 981, 983, n.1 (Ala. 1999) (citations

omitted). As a preliminary matter, the Court notes Defendants failed to

include any assault and battery analysis in its motion (Doc. 25). As such, this

claim will survive Defendants' motion for summary judgment. Before turning

its attention to the remaining torts, the Court must determine whether there

is a basis for holding Sonic responsible for the alleged intentional torts

committed by Toney.

## 1. Sonic's Liability

The Alabama Supreme Court has stated, "[f]or [an employer] to

become liable for [the] intentional torts of its agent, the plaintiff[] must offer

evidence that [1] the agent's wrongful acts were in the line and scope of his

employment; or [2] that the acts were in furtherance of the business of [the

employer]; or [3]  that [the employer] participated in, authorized, or ratified

the wrongful acts." See Joyner v. AAA Cooper Tansp., 477 So.2d 364, 365

(Ala. 1985); see also Potts v. BE & K Constr. Co., 604 So.2d 298, 400 (Ala.

1992). Plaintiff proceeds on the third theory of employer liability. Sonic will

be "directly liable for its own conduct if it authorizes or participates in the

employee's acts or ratifies the employee's conduct after it learns of the

action." Potts, 604 So.2d at 400. In order to show Sonic ratified the conduct,

Williams "must show that [Sonic] either expressly adopted [Toney's] behavior

or that it implicitly approved of it. An employer's failure to stop the tortious conduct after it learns of the conduct will support an inference that the employer tolerated the conduct." Potts, 604 So.2d at 400. The Alabama Supreme Court further specified Plaintiff's burden:

> [To show] an employer implicitly "ratified" or "tolerated" one employee's sexual harassment of another employee, we now hold that in addition to proving the underlying tortious conduct of an offending employee, a complaining employee must show that the employer (1) had actual knowledge of the tortious conduct of the offending employee and that the tortious conduct was directed at and visited upon the complaining employee; (2) that based upon this knowledge, the employer knew, or should have known, that such conduct constituted sexual harassment and/or a continuing tort; and (3) that the employer failed to take "adequate" steps to remedy the situation.

Id.

To support her claim that Sonic participated in and/or ratified Toney's harassment, Williams testifies she observed Toney "touch the private parts of a co-employee with Mr. Dronet present. [The co-employee] got very upset[,] but Mr. Dronet didn't do anything." (Doc. 27-1, p. 5). Furthermore, Williams states she also witnessed Dronet himself engage in inappropriate sexual touching of a female employee. According to Plaintiff, "I also saw Mr. Dronet slap another teenaged female co-employee on the bottom. That employee asked Mr. Dronet why he did that, and he replied, 'because you are a bad girl[.]'" Id. Furthermore, Wallace testifies that his report to Hill regarding Toney's taking photographs of the female employees' bodies resulted in a storewide meeting concerning sexual harassment. Id. at 2. If a jury finds this

evidence credible, it could reasonably conclude Dronet—and through him Sonic—had actual knowledge of Toney's tortious conduct. Based upon that knowledge, a jury could find Sonic knew, or should have known, that such conduct, if proven, could constitute an ongoing tort. See Machen, 761 So.2d at 985. A jury could similarly find Dronet's actions not only condoned Toney's behavior but also actively encouraged it.

It is well settled that "evidence that an employer, after learning of the tortious conduct, failed to stop the tortious conduct of the offending employee presents a question of fact, unique under the circumstances of each case, as to whether the steps taken to stop the conduct were adequate." Potts, 604 So.2d at 401. The Court finds a genuine issue of material fact exists as to whether Sonic's disciplinary action (if the storewide meeting can even be considered disciplinary action) was reasonably calculated to stop the conduct. Moreover, no evidence remotely suggests Toney was personally or individually reprimanded for his conduct. In fact, Plaintiff's testimony intimates any allegations against Toney were imperiously ignored. (See Doc. 27-1, p. 5). For these reasons, the Court finds a question of material fact as to Sonic's liability for Toney's intentional torts and **DENIES** summary judgment.

Having settled that Sonic is potentially liable for Toney's intentional torts, the Court now looks to the claims for invasion of privacy and outrage.

**2. Invasion of Privacy**

A claim for invasion of privacy may consist of "four limited and distinct wrongs: (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; (4) appropriating some element of the plaintiff's personality for public use." Johnston v. Fuller, 706 So.2d 700, 701 (Ala.1997). The Alabama Supreme Court more specifically described privacy claims based upon the ground of wrongful intrusion as:

> the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities. Phillips v. Smalley Maintenance Servs., 435 So.2d 705 (Ala. 1983); Restatement (Second) of Torts § 652B (1977).

McIsaac v. WZEW-FM Corp., 495 So.2d 649, 65 (Ala. 1986). This Court has previously noted, "Alabama courts have generally required invasion of privacy claims to allege both ongoing, persistent verbal harassment and unwanted physical contact." Austin v. Mac-Lean Fogg Co., 999 F.Supp.2d 1254, 1263 (S.D. Ala. 2014). Plaintiff's allegations that Toney repeatedly rubbed against her bottom and breasts on an ongoing, persistent basis in combination with sexually suggestive comments (albeit less frequent) presents evidence such that a reasonable jury could find Toney committed an invasion of privacy. See, e.g., id. at 1263; Ex parte Atmore Community Hosp., 719 So.2d 1190, 1194 (Ala. 1998) (citing Phillips, 435 So.2d at 709)). As such, summary judgment as to the invasion of privacy claim is **DENIED**.

### 3. The Tort of Outrage

"Alabama courts do recognize the tort of outrage for sexual harassment . . . cases, but only in particularly egregious cases." K.M. v. Ala. Dep't of Youth Servs., 360 F.Supp.2d 1253, 1260 (M.D. Ala. 2005). Alabama courts have described the framework of the tort as follows:

> [W]e now recognize that one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress. The emotional distress thereunder must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme . . . . By extreme we refer to conduct so outrageous in character and so extreme in degree as to go well beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.

Baker v. State Farm General Ins. Co., 585 So.2d 804, 807 (Ala. 1991) (citation omitted). In reviewing the pertinent legal authorities, this Court has found "the line of demarcation between non-actionable outrage claims and actionable outrage claims in the employment arena is found in the determination of whether the termination is for reasons that contravene public policy." Lees v. Sea Breeze Health Care Center, Inc., 391 F.Supp.2d 1103, 1107 (S.D. Ala. 2005). Although this Court has determined Plaintiff's retaliation claim is not actionable, it cannot ignore her surviving sexual harassment claim until Title VII. As the District Court for the Northern District of Alabama recently stated, "Title VII establishes that it is against

public policy to create a hostile work environment." <u>Dates v. Frank Norton, LLC</u>, 2016 WL 3087050, *34 (N.D. Ala. June 2, 2016). Bearing this in mind, the Court finds consideration of the evidence of Toney's alleged sexual harassment, including "daily" or "constant" sexual touching, could amount to "particularly egregious" behavior that is "atrocious and utterly intolerable in a civilized society." While the Court does not weigh the credibility of the evidence, it acknowledges a jury could do so here and could find Toney's unmitigated harassment of Williams, among other female employees at Sonic, to be an outrage. For these reasons, Defendants' motion for summary judgment is **DENIED**.

### 4. Negligent and Wanton Supervision

In Count V of her Complaint, Williams alleges Sonic and Dronet negligently and wantonly supervised Toney. "In order to establish a claim against an employer for negligent supervision, training, and/or retention, the plaintiff must establish that the allegedly incompetent employee committed a common-law Alabama tort." <u>Thrasher v. Ivan Leonard Chevrolet, Inc.</u>, 195 F.Supp.2d 1314, 1320 (N.D. Ala. 2002).  In this case, the torts in question would be assault and battery, invasion of privacy, and/or outrage. To recover on a negligent supervision claim against an employer, "a plaintiff must first show 'by affirmative proof that the alleged incompetence of the employee was actually known to the employer or was discoverable by the employer if it had exercised care and proper diligence." <u>Portera v. Winn Dixie of Montgomery,</u>

Inc., 996 F.Supp. 1418, 1438 (M.D. Ala. 1998) (quoting Ledbetter v. United

Am. Ins. Co., 624 So.2d 1371, 1373 (Ala. 1993)); see also Pressley v. City of

Anniston and Daryl Abernathy, 2016 WL 4679135, *14 (N.D. Ala. Sept. 7,

2016).

　　　As discussed extensively, supra, the Court finds a material question of

fact regarding Sonic's and Dronet's actual or constructive knowledge of

Toney's alleged sexual assault. Plaintiff and Wallace both testify they

informed management of Toney's unsavory behavior. In Wallace's case, his

report led to a storewide meeting on sexual harassment. If a jury were to

believe both or either reports were made, it could conclude these reports

served as notice of Toney's commission of a common law tort. Additionally,

Plaintiff has stated she witnessed Toney's sexual harassment of another

female employee in Dronet's presence and noted Dronet "didn't do anything."

These facts, taken in the light most favorable to Plaintiff, present a question

of material fact for a jury to determine. See, e.g., Pressley, 2016 WL 4679135

at *14; Machen, 761 So.2d at 986–87. Further, Plaintiff has created a

question of material fact as to Sonic's supervision of Toney after receiving

reports of harassment. It is for a jury to decide whether a sweeping storewide

meeting, rather than individual discipline, was enough to dissuade Toney's

repeating the behavior or whether follow-up investigation was warranted.

See Machen, 761 So.2d at 987. For these reasons, the Court finds it proper to

**DENY** Sonic's motion for summary judgment as to Plaintiff's negligent or wanton supervision claim.

## III. Conclusion

Accordingly, for the reasons stated above, Defendants' motion for summary judgment (Doc. 25) is due to be **GRANTED** with regard to Plaintiff's Title VII retaliation claim only. Summary judgment is **DENIED** with regard to Plaintiff's claim for hostile work environment and the state law tort claims. As a result, the following causes of action remain to be tried:

Against Defendant Sonic:      Title VII hostile work environment,
                                        Assault and Battery
                                        Invasion of Privacy
                                        Outrage
                                        Negligent Supervision

Against Defendant Dronet:     Assault and Battery
                                        Invasion of Privacy
                                        Outrage
                                        Negligent Supervision

Against Defendant Toney:      Assault and Battery
                                          Invasion of Privacy
                                      Outrage

Further, the Court finds Defendants' motions to strike (Docs. 28 & 30) to be **MOOT** as the objections therein have been treated accordingly.

**DONE** and **ORDERED** this 7th day of October, 2016.

/s/  Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE